61048, Carl F. Jenkins v. Frank T. Gangi Good morning, Mr. Osterberg Good morning, your honor. May it please the appellate Frank Gangi. With the court's permission, I'd like to reserve one minute of my time for rebuttal. I certainly want to get to the merits, but in light of the discussion in the prior cases, I'd like to start with mootness, because I think it's a very easy issue given the discussion that was just had. Judgment is correct. This court does not take evidence, of course, and there is no evidence that this appeal has now become moot. There was a sale in this case, but the fact that there was a sale does not automatically moot the appeal. And that has been the case for approximately 100 years, when the Second Circuit talked about this issue in a case cited in my brief. Why don't you rely on your brief on mootness, unless some of my colleagues have questions, and move on to the merits. Thank you, your honor. Why was there an abuse of discretion in approval of the sale by the receiver? Yes, your honor. I think the best way to get to the answer to that question is to go through the facts of the sale. And as we do that, we can see... Could you summarize them under topic headings? We've actually read the briefs. We know this case. Yes, your honor. So under topic headings, the sale was to the receiver's hired consultant. There was an exclusive relationship between the receiver and Hilco, who was the buyer, with respect to the sale of IP number resources, which was the vast majority of the assets sold in this transaction. So to put a concrete example on it, you're saying if we just had the real estate here, and if the receiver had gone out and found Acme Realty Company to market the property, and it tried for two years to market it and finally still had one house it couldn't sell after two years, and the realtor came back and said, you know, I haven't found anyone to sell it, but I'll buy it. I think what you're saying to us is the receiver shouldn't sell it to the realtor. I'm saying that the receiver should not sell it to the realtor without checking. So in other words... What do you mean without checking? It was disclosed. No, your honor. I'm sorry. The relationship was disclosed. What do you mean without checking? You have to go to the district court on a particular transaction and get permission? Your honor, on a sale of this magnitude, yes. The district court is responsible for overseeing all of the disposition of the assets and the receivership. When you say checking, check what? What should the receiver check? So the receiver should check, well, as a matter of fact, is the price I'm being offered fair? Okay, suppose the receiver looks at it and says, we've been trying for two years, I've got to wrap this up, I can't drag on forever, things could go down, I think it's fair. Don't we then review that for abuse of discretion? You do review it for abuse of discretion. So what's the abuse of discretion? The receiver then has to get the district court judge to agree, right? Yes, your honor. And it is an abuse of discretion standard. And I submit that it isn't a... What we cannot have happen here is we cannot have expediency override the receiver's duty and the court's duty to maximize the value of the assets. Of course you can, because it's a balancing test between expediency and maximizing value, because if you maximize value ten years from now as opposed to sell it now, maybe you get more. So it's a balancing that we would look to ask, did it abuse its discretion? And I'm not hearing or finding in the brief really why the district court and the receiver abused their respective discretion here. Well, your honor, I would submit that one of the reasons you're not finding that in the record is that we don't have a very good record. In other words, when the receiver brought this to the district court, the receiver said, I think in my business judgment this is a good deal. The district court says the receiver thinks in his business judgment it's a good deal. I agree. There was no discussion of the value of the property, the potential other buyers, whether there had been an appraisal, what exact efforts had been made to sell the property, et cetera. That's a little bit of an overstatement, isn't it? Didn't the receiver say the property was a bit of real estate, for example, bought ten years earlier, boost, collapse of the market? Didn't it say that they tried selling the IP addresses for a while, and so now we're dealing with the leftover ones, and some of them may no longer be good because the names may have been reassigned? I thought the receiver didn't pay attention to that stuff. Your Honor, the receiver has said that after the fact. There was no discussion of that at the time. Before the decision? Before the decision, Your Honor. It's not in the record? It's not in the record, Your Honor. Well, it's in the record in briefs. No, the receiver says that when the receiver goes to the district court, right, to get approval of the sale. I keep having the sense that your argument here is different from what you said in your briefs, that you're trying to make a sort of procedural argument. Before the receiver could make any sales, first it had to go get permission. Is that the argument you're making? I'm saying that the receiver did the correct thing in seeking approval for the sale, the district court ruled on the sale, and that the receiver did not present evidence. But Judge Chiodo has just told you about evidence that is in the record that was presented by the receiver, so I still don't get what you're saying. Respectfully, Your Honor, I disagree. The evidence is not in the record. It's not evidence that was presented by the receiver. The district court did not take evidence in this case. What we do have, the evidence that we do have, comes from the sale that came three months before. Same type of assets sold for more than twice as much as what Hilco paid in this sale. So this entire process has been about Mr. Ganji crying foul, and yet we still don't know why is this sale fair? Why is that property, why is $500,000 the right price? What is the property worth? What are those numbers worth? Why is it worth that amount? Why is this a fair deal? Who was approached to potentially buy this property? Who rejected it? What were the reasons they gave to reject it? There are no questions answered here except an argument by the receiver's counsel. Is there evidence in the record as to what exactly was the relationship between Hilco and the receiver? Your Honor, the receiver has conceded in its briefs that Hilco was, that North... I'm sorry, the question is... My question is, is there evidence in the record as to the exact relationship between Hilco and the receiver? Yes, Your Honor. When is that evidence, please? There is the receiver's statement in the motion for the order approving the transfer that the receiver entered into an exclusive agreement with Hilco with respect to the marketing and sale of IP number resources rights held by or determined to be part of the receivership estate. That's in the appendix on page 76. And how does that make this an issue of fiduciary relationship? Yes, Your Honor. So I believe there's no question that the receiver is a fiduciary in this case. And then the law is that a receiver's agent is a fiduciary with respect to the... Unless it is... Maybe I didn't phrase my question correctly. That evidence, does it establish that there was a fiduciary relationship between the two? I believe it does, Your Honor. Because... A marketing? It's a... What the Hilco has testified it did, Your Honor, was identify and contact buyers for the assets, meet by phone with and in person with potential buyers, and negotiate with the buyers. Hilco was retained by the receiver because they are a telecom asset expert. The receiver is not. And the law is that where the receiver is relying on that expertise, the agent then becomes a fiduciary in the same way that the receiver is. Who has a question? He's reserved. Thank you, Your Honor. Mr. Libby? Good morning, Your Honors. If it please the Court, Donald Libby for the receiver, Karl F. Jenkins. My mootness argument, Your Honors, I will leave to our papers. I think the questions the courts have been asking today is whether there was an abuse of discretion by the district court in approving the sale. And I think the evidence that's before this Court in the record shows that the receiver sought the judge's determination as to whether the sale was fair and reasonable under the circumstances. The receiver disclosed a relationship between Northeast and Hilco that was never hidden. Mr. Ganji knew about Hilco from two and a half, three years before when the receiver sought the judge's approval to retain them as a broker. The difference here with respect to whether or not they were fiduciaries, it never rose to that level. They were a broker for IP4 numbers. They've been doing that for almost three years. The receiver and Hilco had successfully sold two IP blocks, but the receiver still had more to sell. He also had the other disparate assets of telephone number and XX numbers and also some domain names and the real estate in Las Vegas. I think the principal argument I thought I just heard from Mr. Osterberg was that there are no facts put before the district court by the receiver that would have allowed the district court to determine that the terms and price were reasonable and that all these facts that we thought were in the record because they're referred to in the briefs aren't in the record. For example, the real estate in Las Vegas, we're told in the briefs that the prices that Mr. Ganji points to are pre-collapse prices and that this was a fair transaction. We're told with respect to the others that they'd sold other stuff off already. These were the leftovers and some of them may no longer be good. Are those facts in the record? Were they in the record before the district court? Yes, they were, Your Honor. As a matter of fact, after we filed the motion and Mr. Ganji objected, we filed a reply that specifically talked about the things he objected to. Okay, but the reply, I look at a lot of the sites and what they are to the briefs. There's a Hazen affidavit. If we look at the underlying briefs filed before the district court, will we find citations to things in the record to support what's said in the briefs? You will, Your Honor. So with respect to their discrete business with the receiver, let's just say it's Hilco because we disclosed Northeast was an entity that they formed in order to buy bankrupt estate assets and things like that, which is a typical business transaction in the event that there's any liability that attaches to any of these assets. So we disclosed that to them. Mr. Ganji said, well, you disclosed it in a footnote. So he's admitted we provided that information to the court. We then followed up with a reply brief and gave more information, as I just said, that Hilco was formed for this particular purpose, to acquire assets. The real key here is that Hilco had been working for years to sell the IP assets. They had been successful on two occasions. The receivership had been going on for quite some time and the judge was interested in trying to wind it down. And that was one of the reasons that the receiver decided, maybe I should see if anybody's interested in this. There was conversations with Hilco and Hilco said, oh, by the way, we buy real estate now. We do all these other things. We branched out into everything. So a package was put together of these particular discrete assets and these disparate assets. An offer was made. There was negotiation between, a good fake negotiation as the court found, between Northeast or Hilco and the receiver, and they arrived at a price of $525,000. So this was a deal solicited by the receiver rather than solicited by the purchaser. That's correct, Your Honor. And the interesting thing here is that I think what Mr. Ganji struggles with is that we had to allocate certain of the purchase price for certain of the assets. And there were reasons for doing that. For example, the $275,000 that was reserved, or excuse me, allocated for the IP address, we had to do that because we had a settlement agreement with Mr. Bruce, which is in the record, which required us to pay him 13% of whatever the gross sales price was for that particular block. And that was a result of an appeal that was here that we were able to settle and have it dismissed here. So we had an obligation to Mr. Bruce to allocate a price that wouldn't seek objection from him. And it is true, we had sold a block for much more several months before that, I think six months before that, which Mr. Bruce also participated in because he was the recipient of the settlement with those two particular blocks. So we had to allocate something for that. And the receiver determined in his business judgment that $275,000 was reasonable for that particular block. Now with respect to the real estate, I don't think there's any dispute here that we had a downturn and Las Vegas was hit worse than others. So what Mr. Ganji says is it's worth hundreds of thousands of dollars more than that when in fact the assessor's office taxes it, all five parcels, at $132,000 or $134,000. Today, not ten years ago when Mr. Ganji bought it for a high price. So there's no evidence before the court, and there was no evidence in the district court, that the pricing and the allocations that were made by the receiver were anything other than his reasonable business judgment, which he had seen throughout the course of the receivership that he had applied in numerous sales to jets, aircraft, businesses. So she had a track record with him, and what she did was she got the briefs, saw what Mr. Ganji was saying with respect to his objections, and she overruled them because there was no evidence that the receiver's pricing for this was anything other than what it was, which was fair and reasonable. And the judge determined that. The deal was fair and reasonable, and more importantly, it was in the best interest of the estate. Now, interestingly enough here, nobody else filed objections to the sale who probably had better standing than Mr. Ganji to raise objection because they're going to be the beneficiaries, administrative predators of this money. None of them objected. They also would like this over. So I stand before you and I say there was no abuse of discretion, and I believe that the information that was before the court was sufficient for her to determine in her discretion that the receiver's sale was adequate under the circumstances. Thank you.  Briefly, Your Honor, respectfully, there is no evidence of most of what Mr. Libby said in the record. You won't find the discussion of the negotiation. You won't find discussion of who made the offer. You won't find any of that in the record. There are no underlying facts in the record. There are only conclusions, and that is not appropriate. With respect to the real estate, the — Was there an objection before Judge Sobel that representations were put in briefs that were not backed up by affidavits? Yes, Your Honor. So our objection was that there's been no showing that these prices are adequate, and that's always been the case. That's not quite the same. See, I go through your brief, and you do say there should have been a hearing, but I don't hear you saying that the judge improperly relied on representations by the receiver and the receiver's counsel as opposed to demanding that it be put in affidavits. My argument, Your Honor, is that there was an obligation to elicit and find facts. I think that's clear in this Court's precedent in the thermoelectron case that I cited. It's not permissible for the district court to simply recite conclusions of facts without an underlying fact, and the receiver should have presented these facts in order to have the sale approved. Thank you. Thank you.